UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ZACHARY HILLER,                              :
       Plaintiff,                            :
                                              :  **OPINION AND ORDER**
v.                                           :
                                              :  16 CV 5447 (VB)
SCHWARTZ & FEINSOD, JONATHAN                 :
FEINSOD, and NEIL SCHWARTZ,                  :
       Defendants.                           :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Zachary Hiller brings this action against defendants Schwartz & Feinsod, Inc., Neil Schwartz, and Jonathan Feinsod, alleging defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and the New York Labor Law, § 191 et seq. ("NYLL"), by, inter alia, failing to compensate plaintiff for wages due, and retaliating against plaintiff for asking defendants when they would pay him.

    Before the Court are (i) defendants' motion to compel arbitration and stay this action pending resolution of the arbitration pursuant to Section 5 of the National Football League Players Association Regulations Governing Contract Advisors ("NFLPA Regulations") and Section 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA") (Doc. #10), and (ii) plaintiff's motion for a declaratory judgment that the NFLPA Regulations' six-month limitations period is unenforceable as a matter of law (Doc. #23).

    For the reasons set forth below, (i) defendants' motion is GRANTED, and (ii) plaintiff's motion is DENIED without prejudice.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

# BACKGROUND

I.      Factual Background

The following factual background is drawn from the complaint and the parties' submissions in support of and in opposition to the pending motions.

Plaintiff Zachary Hiller is a certified NFLPA Contract Advisor (i.e., an "agent" for professional football players) who received his certification from the NFLPA in October 2014. As part of the certification process, plaintiff agreed to be bound by the NFLPA Regulations, which govern the conduct of all current and aspiring NFLPA Contract Advisors.

Section 5 of the NFLPA Regulations establishes an arbitration procedure, which provides in pertinent part:

> This arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from the following:
> . . .
> (3) The meaning, interpretation or enforcement of a fee agreement;
>
> (4) Any . . . activities of a Contract Advisor within the scope of these Regulations;
> . . .
> (6) A dispute between two or more Contract Advisors with respect to their individual entitlement to fees owed, whether paid or unpaid, by a player-client who was jointly represented by such Contract Advisors, or represented by a firm with which the Contract Advisors in question were associated.

(Schwartz Decl. Ex. B).

Defendants Neil Schwartz and Jonathan Feinsod are also certified NFLPA Contract Advisors, and, accordingly, are also bound by the NFLPA Regulations and its arbitration provision. Defendant Schwartz & Feinsod, Inc., is a corporation organized under the laws of the State of New York. Plaintiff alleges Neil Schwartz and Jonathan Feinsod are the co-owners of Schwartz & Feinsod, Inc., a sports agency doing business as Schwartz & Feinsod. Defendants

do not deny this contention, but instead assert defendants Neil Schwartz and Jonathan Feinsod are the sole employees of Schwartz & Feinsod, Inc.

Plaintiff claims he began working for defendants during the summer of 2011, while completing his sophomore year of college at the University of Michigan. According to plaintiff, he worked Monday through Saturday and Sundays as needed. Plaintiff also claims he worked for defendants during the summer of 2012, Monday through Saturday and Sundays as needed, and that he continued working for defendants, Monday through Friday and weekends as needed, during the summer of 2013 following his graduation from the University of Michigan. During the 2011–12 and 2012–13 school years, plaintiff alleges he "made himself available" to defendants and performed tasks at their direction as needed. (Compl. ¶ 26).

Plaintiff claims he regularly worked more than forty hours per week for defendants from 2011–13, and his duties included assisting defendants in recruiting potential clients, performing administrative tasks, and running errands for defendants. While defendants dispute these allegations, as discussed in greater detail below, both sides agree plaintiff did not receive any compensation from defendants for hours worked from 2011–13.

During the 2013–14 academic year, plaintiff maintains he continued working for defendants while obtaining a Master of Science degree in marketing from Baruch College. Plaintiff sought this degree to become eligible for certification as an NFLPA Contract Advisor.[1]

Plaintiff further claims that during the summer of 2014 defendants required him to travel on recruiting trips for two to three weeks at a time, during which plaintiff was required to "work around the clock." (Compl. ¶ 31). Plaintiff says he continued to work for defendants during the

---

[1] The NFLPA Regulations provide, inter alia, to be eligible for certification as an NFLPA Contract Advisor, applicants must have received an undergraduate degree from an accredited four-year college or university and a post-graduate degree from an accredited college or university. (Bodansky Decl. Ex. A, § 2).

3

fall of 2014 and the spring of 2015, performing administrative tasks and working on a former NFL player's campaign to become the head of the NFLPA.

In May 2015, plaintiff contends defendant Schwartz "ordered" plaintiff to relocate to Atlanta "to handle operations related to defendants [sic] recruiting efforts." (Compl. ¶ 35). Defendants "assured" plaintiff he would be reimbursed for expenses incurred, including rent, food, transportation, and insurance. (Id.). Defendants also allegedly promised plaintiff he would receive one-third of the compensation defendants received from their client, Garrett Grayson. (Compl. ¶ 35). However, plaintiff claims he never received the promised compensation related to Garrett Grayson, and defendants never reimbursed plaintiff for expenses incurred.

During the summer and fall of 2015, plaintiff claims he continued to "work[] around the clock assisting defendants in their recruitment of players" and performing administrative tasks. (Compl. ¶ 36).

Plaintiff says he asked defendants on numerous occasions when he would receive compensation and reimbursement of expenses. Defendants allegedly assured plaintiff repeatedly that "he would be paid what was owed to him, would eventually make millions of dollars, and that if he did not want to continue working for defendants, there were a plethora of aspiring agents who would gladly take his position." (Compl. ¶ 39).

In February 2016 at the annual NFL Scouting Combine in Indianapolis, plaintiff claims he again asked defendants for the money they owed to him. In response, defendants allegedly refused to pay plaintiff his share of Garrett Grayson's rookie contract or reimburse his expenses, and threatened to not pay plaintiff his agreed-upon share of an endorsement deal plaintiff claims to have brokered. (Compl. ¶ 40). Plaintiff says he resigned from his employment with

defendants following this encounter because he could not continue to work without compensation.

Defendants relate a strikingly different version of events. According to them, plaintiff—the son of a friend of defendant Schwartz—was never employed by defendants at all. Rather, plaintiff "shadowed" Schwartz during the summers of 2011, 2012, and 2013 due to plaintiff's interest in pursuing a career as an agent for professional football players. (Schwartz Decl. ¶ 6). Defendants claim plaintiff had no duties, received no compensation, and was never required to undertake any specific tasks for defendants. (Id.). Defendants maintain plaintiff never engaged in any recruiting activities other than occasionally being present when Schwartz was actively recruiting potential clients.

After plaintiff earned his master's degree in 2014 and applied to the NFLPA to become a certified Contract Advisor—paying for his own licensing fee, dues, and insurance—defendants claim plaintiff and defendants "engaged in some recruiting activities jointly." (Schwartz Decl. ¶ 10). According to defendants, the parties had an oral agreement that fees earned in connection with representation agreements with players on which plaintiff and defendants both appeared as Contract Advisors would be shared 33% to plaintiff and 66% to defendants. (Id.). Defendants maintain that during this period, plaintiff decided for himself which players he would attempt to recruit and where and when he would attempt to do so. Schwartz asserts that he and plaintiff signed only one player representation agreement together.

II. Procedural History

On July 8, 2016, plaintiff filed a complaint alleging defendants violated (i) the FLSA and the NYLL by failing to pay plaintiff minimum wages; (ii) the FLSA and the NYLL by failing to pay plaintiff overtime wages; (iii) the NYLL by failing to pay plaintiff spread-of-hours

5

payments; (iv) the NYLL by failing to provide plaintiff wage notices and wage statements; (iv) the FLSA and the NYLL for retaliating against plaintiff for complaining of violations of the FLSA and the NYLL; and (v) the NYLL for failing to reimburse plaintiff for expenses incurred when he relocated to Atlanta, Georgia.

On August 12, 2016, defendants initiated arbitration under the NFLPA Regulations by filing a grievance against plaintiff. Thereafter, defendants moved in this Court to compel arbitration and stay this action pending resolution of the arbitration. Plaintiff opposed that motion and filed a motion seeking a declaratory judgment that the NFLPA Regulations' six-month limitations period is unenforceable as a matter of law.

## DISCUSSION

I.  Applicable Legal Standards

   A.  Motion to Compel Arbitration

"In the context of motions to compel arbitration brought under the Federal Arbitration Act, the court applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citation omitted). Accordingly, the Court must grant a motion to compel arbitration if the pleadings, and any affidavits with supporting exhibits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).

"A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010) (citing Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91–92 (2000)).

B.      Motion for Declaratory Judgment

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in a "case of actual controversy within its jurisdiction" a court of the United States may "declare the rights and other legal relations" of an interested party "whether or not further relief is or could be sought." See Beacon Const. Co. v. Matco Elec. Co., 521 F.2d 392, 397 (2d Cir. 1975).

Even when jurisdiction exists, federal courts have "unique and substantial discretion" to decline to hear a declaratory judgment action. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). Before entertaining a declaratory judgment action, courts consider:

> (i) 'whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved'; (ii) 'whether a judgment would finalize the controversy and offer relief from uncertainty'; (iii) 'whether the proposed remedy is being used merely for procedural fencing or a race to res judicata'; (iv) 'whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court'; and (v) 'whether there is a better or more effective remedy.'

The N.Y. Times Co. v. Gonzales, 459 F.3d 160, 167 (2d Cir. 2006) (quoting Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359–60 (2d Cir. 2003)).

Particular discretion is warranted when there is a proceeding pending in another forum that will resolve the controversies between the parties. See ED Capital, LLC v. Bloomfield Investment Resources Corp., 155 F. Supp. 434, 444 (S.D.N.Y. 2016), aff'd in part and vacated in part on other grounds, 660 Fed. App'x 27 (2d Cir. 2016) (summary order); see also Dow Jones & Co., 346 F.3d at 359 (upholding dismissal of declaratory judgment action in light of a parallel foreign proceeding).

II.     The Federal Arbitration Act

The FAA "creates a body of federal substantive law of arbitrability applicable to arbitration agreements . . . affecting interstate commerce." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 120 (2d Cir. 2010) (quoting Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran,

7

445 F.3d 121, 125 (2d Cir. 2006)). It also "establishes 'a liberal federal policy favoring arbitration agreements.'" CompuCredit Corp. v. Greenwood, 565 U.S. 95, 98 (2012) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)); see also Arciniaga v. Gen. Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration."). Accordingly, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24–25.

Nevertheless, "the FAA does not require parties to arbitrate when they have not agreed to do so." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989). The purpose of the FAA is "to ensur[e] that private arbitration agreements are enforced according to their terms," AT&T Mobility LLC v. Concepcion, 563 U.S. 339, 343 (2011) (internal quotation marks omitted), and an arbitration agreement is interpreted as any other contract would be. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67–68 (2010). Thus, the FAA reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 563 U.S. at 339 (internal quotation marks and citations omitted).

III. Arbitrability of Plaintiff's Claims Under the FAA

In deciding whether to compel arbitration, a court must determine (i) whether the parties agreed to arbitrate; (ii) if so, the scope of the agreement to arbitrate; and (iii) whether Congress intended any federal statutory claims asserted to be nonarbitrable. JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004).

Here, there is no dispute that plaintiff and defendants agreed to be bound by the NFLPA Regulations, which contain an arbitration provision. Moreover, plaintiff does not contend

8

Congress intended FLSA claims to be nonarbitrable as a matter of law.[2] Instead, plaintiff argues that because he never expressly agreed to arbitrate wage and hour claims, the Court should deny defendants' motion to compel arbitration. Thus, the question of whether to compel arbitration turns on the scope of the NFLPA Regulations' arbitration provision.

The Second Circuit has provided a roadmap for determining whether particular disputes fall within the scope of an arbitration agreement. First, the court "should classify the particular clause as either broad or narrow." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d at 172 (internal quotation marks omitted).

If the clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." Id. (internal quotation marks omitted). "A collateral matter will generally be ruled beyond [the] purview" of a narrow clause. Id. In contrast, "[w]here the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Id. (internal quotation marks omitted). Notwithstanding these guidelines, courts are not required "to make the nice determination of exactly where in the range between broad and narrow [an arbitration] clause fits." WorldCrisa Corp. v. Armstrong, 129 F.3d 71, 75 (2d Cir. 1997).

Moreover, "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather

---

[2] Courts in this Circuit routinely conclude that FLSA claims are indeed arbitrable. See, e.g., Bynum v. Maplebear Inc., 160 F. Supp. 3d 527, 540 (E.D.N.Y. 2016) ("The decisions of the Supreme Court, as well as of courts both within and outside this circuit, indicate that valid arbitration agreements subjecting individual FLSA claims to arbitration must be enforced in accordance with the FAA.").

9

than the legal causes of action asserted." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987). "If the allegations underlying the claims touch matters covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them." JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d at 172 (internal quotation marks omitted).

The scope of the NFLPA Regulations is the full range of recruiting and advising activities that a Contract Advisor may engage in on behalf of a player.[3] The introduction to the NFLPA Regulations lays out the authority for their adoption, and expressly provides that "[p]ersons serving or wishing to serve" as Contract Advisors "shall be governed by these Regulations." (Schwartz Decl. Ex. B, at 2).

Additionally, Section 3 establishes standards of conduct for Contract Advisors and requires, among other things, that Contract Advisors "[f]ully comply with applicable state and federal laws." (Schwartz Decl. Ex. B, § 3(A)(14)). Section 3(A)(19) sets forth various disclosure requirements related to payments Contract Advisors make to others "for assistance in recruiting" players, and Section 3(B)(32) expressly prohibits Contract Advisors from "[u]sing, associating with, employing or entering into any business relationship with any individual in the recruitment

---

[3] Section 1 of the NFLPA Regulations states:

> The activities of Contract Advisors which are governed by these Regulations include: the providing of advice, counsel, information or assistance to players with respect to negotiating their individual contracts with Clubs and/or thereafter in enforcing those contracts; the conduct of individual compensation negotiations with the Clubs on behalf of players; and any other activity or conduct which directly bears upon the Contract Advisor's integrity, competence or ability to properly represent individual NFL players and the NFLPA in individual contract negotiations, including the handling of player funds, providing tax counseling and preparation services, and providing financial advice and investment services to individual players.

(Schwartz Decl. Ex. B).

of prospective player-clients who is not Certified and in good standing as a Contract Advisor pursuant to these Regulations." (Id.).

In light of the expansive scope of the NFLPA Regulations, coupled with the language of the arbitration provision—namely, that "arbitration . . . shall be the exclusive method for resolving any and all disputes that may arise from . . . . [a]ny . . . activities of a Contract Advisor within the scope of these Regulations"—the Court concludes that the arbitration provision here "is close enough to the 'broad' end of the spectrum to justify a presumption of arbitrability." See WorldCrisa Corp. v. Armstrong, 129 F.3d at 75; see also JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d at 172 (provision stating "'[a]ny and all differences and disputes of whatsoever nature arising out of this Charter' are subject to arbitration" may be characterized as "broad" and collecting cases).

Turning to the substance of plaintiff's allegations, plaintiff contends the crux of his complaint is a wage and hour dispute. Specifically, plaintiff brings three causes of action under the FLSA and six causes of action under the NYLL, all based on the same factual allegations. These allegations state that, at the direction of defendants, plaintiff helped defendants recruit clients, including by performing administrative tasks and running errands, without receiving compensation or reimbursement for expenses incurred, as promised by defendants. After plaintiff complained about defendants' failure to compensate him, defendants threatened to deprive plaintiff of additional moneys owed to him pursuant to a player representation agreement and an endorsement deal.

Although it may be that plaintiff states colorable FLSA and NYLL claims, the viability of such claims will turn on, among other things, questions of fact. These questions of fact include whether plaintiff was ever an "employee" of defendants entitled to the protections set forth in the

FLSA and the NYLL. The question of whether plaintiff was an employee of defendants, in turn, is inextricably linked to, among other things, the nature of the relationship between plaintiff and defendants, each party's expectations regarding compensation, the extent to which defendants provided plaintiff training to become a "sports agent," the extent to which plaintiff's experience with defendants was tied to plaintiff's contemporaneous educational programs, and the extent to which the tasks plaintiff performed for defendants complemented, rather than displaced, the work of paid employees while providing significant educational benefits to plaintiff. See Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 536–38 (2d Cir. 2016).[4]

The nature of the relationship between plaintiff—an aspiring Contract Advisor prior to October 2014 and a certified Contract Advisor from October 2014 on—and defendants—certified Contract Advisors at all times relevant to this dispute—is also governed by the NFLPA Regulations. And, again, those Regulations state that arbitration "shall be the exclusive method for resolving any and all disputes that may arise from [a]ny . . . activities of a Contract Advisor within the scope of these Regulations." (Schwartz Decl. Ex. B § 5(A)).

Bearing in mind that the federal policy favoring arbitration "requires [courts] to construe arbitration clauses as broadly as possible," In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011), the Court concludes the NFLPA Regulations' arbitration clause encompasses plaintiff's claims against defendants and, thus, plaintiff's claims are indeed arbitrable.

Accordingly, defendants' motion to compel arbitration is granted.

---

[4] In Glatt v. Fox Searchlight Pictures, Inc., the Second Circuit held that the question of whether an unpaid intern or trainee is an employee under the FLSA and the NYLL depends on whether the intern or the employer is the "primary beneficiary of the relationship." 811 F.3d at 536. The primary beneficiary test is a flexible standard that "acknowledges that the intern-employer relationship should not be analyzed in the same manner as the standard employer-employee relationship because the intern enters into the relationship with the expectation of receiving educational or vocational benefits that are not necessarily expected with all forms of employment." Id.

IV.     Plaintiff's Motion for a Declaratory Judgment

Section 5(B) of the NFLPA Regulations provides that any arbitration thereunder must be commenced "within six (6) months from the date of the occurrence of the event upon which the grievance is based or within six (6) months from the date on which the facts of the matter become known or reasonably should have become known to the grievant, whichever is later." (Schwartz Decl. Ex. B). Plaintiff seeks a declaratory judgment that this limitations period is unenforceable as a matter of law because it "artificial[ly] shorten[s]" the statute of limitations applicable to plaintiff's FLSA and NYLL claims, thereby precluding the enforcement of plaintiff's statutory rights.[5] (Pl.'s brief at 3).

The Court disagrees.

When parties agree to submit a dispute to arbitration, the arbitrator is "bound to decide that dispute in accord with the [body of] law giving rise to the claim." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 637. Having granted defendants' motion to compel arbitration, the Court has no reason to believe the arbitrator will not properly apply the applicable law to plaintiff's claims. Moreover, plaintiff does not assert any other reason for assuming at the outset of this dispute that arbitration will not provide an adequate forum for "vindicate[ing his] statutory cause[s] of action" or otherwise resolving his claims against defendants. Accordingly,

---

[5] Plaintiff relies on the Second Circuit's statement that "a federal court will compel arbitration of a statutory claim only if it is clear that 'the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum,' such that the statute under which its claims are brought 'will continue to serve both its remedial and deterrent function.'" Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 125 (2d Cir. 2010) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985)). To the extent this pronouncement, which appears in dicta, implies defendants here have the burden of establishing the validity of the arbitration agreement, it is inconsistent with the weight of authority that holds "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be . . . invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010) (citing Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91–92 (2000)).

there is no reason for the Court to assume at this time that plaintiff's FLSA and NYLL claims may not be effectively vindicated in arbitration.

Additionally, the general rule in this Circuit is if "claims are subject to a valid and enforceable arbitration agreement, the arbitrator, not the court, should be deciding the statute of limitations issue." Martens v. Thomann, 273 F.3d 159, 179 n.14 (2d Cir. 2001); see also Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 121 (2d Cir. 1991) ("any limitations defense—whether stemming from the arbitration agreement, arbitration association rule, or . . . statute—is an issue to be addressed by the arbitrators.").

Because plaintiff has not advanced a compelling reason to depart from the general rule that the arbitrator should decide statute of limitations issues, nor has he established that he will not be able to vindicate his statutory rights in arbitration, the Court declines to rule at this time and on this record that the NFLPA Regulations' six-month limitations period is unenforceable as a matter of law.

Finally, the Court notes that it will have the opportunity, if necessary, at the award-enforcement stage to ensure that plaintiff's legitimate interests in the enforcement of the FLSA and NYLL have been addressed. Cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 638 (observing U.S. courts would have opportunity to ensure proper enforcement of American antitrust laws at award-enforcement stage after international arbitration permitted to go forward).

## CONCLUSION

Defendants' motion to compel arbitration and stay the action pending arbitration is GRANTED.

Plaintiff's motion for a declaratory judgment that the NFLPA Regulations' six-month limitations period is unenforceable as a matter of law is DENIED WITHOUT PREJUDICE.

This action is hereby STAYED pending arbitration.

The parties shall inform the Court of the status of the arbitration by August 31, 2017, and every 90 days thereafter. Additionally, within 10 days of completion of the arbitration, the parties shall provide a joint status report to the Court.

The Clerk is instructed to terminate the motions. (Docs. ##10, 23).

Dated: May 22, 2017
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge